IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 06–cv–00323–EWN–MEH

ALEXA CORNELL,

    Plaintiff,

v.

HARMONY HOMES, INC.,

    Defendant.

## ORDER AND MEMORANDUM OF DECISION

This is an employment discrimination case. Plaintiff Alexa Cornell alleges that her former employer, Defendant Harmony Homes, Inc., discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (2006). This matter is presently before the court on "Defendant's Motion to Dismiss, or, in the Alternative, Motion to Stay and to Compel Arbitration," filed March 17, 2006. Jurisdiction is proper due to the existence of a federal question, pursuant to 28 U.S.C. § 1331 (2006).

*FACTS*

### 1. *Factual Background*

The following facts are taken from Plaintiff's complaint and the parties' submissions in connection with Defendant's motion. Defendant is a corporation in the business of home

-1-

construction and sales.  (Compl. ¶ 3 [filed Feb. 24, 2006] [hereinafter "Compl."].)  In February 2001, Plaintiff began working for Defendant as a hostess.  (*Id.* ¶ 5.)  In May 2001, Plaintiff was diagnosed with multiple sclerosis ("MS"), a disease of her central nervous system.  (*Id.* ¶ 6.)  Later the same month, Plaintiff informed Defendant of her diagnosis.  (*Id.*)  During the period of time relevant to this case, Plaintiff's MS affected her major life activities, including walking, standing, lifting, balancing, and caring for herself.  (*Id.* ¶ 2.)  Specifically, Plaintiff's MS caused motor loss, numbness, burning sensations, and pain in her legs.  (*Id.* ¶ 7.)  Despite her symptoms, Plaintiff was able to perform her job duties.  (*Id.* ¶ 8.)

On March 5, 2002, the parties entered into an employment contract (the "Employment Agreement"), contemplating a period of time from January 24, 2002 through "December," but lacking a specific year for the end of the contract term.  (Def.'s Mot. to Dismiss, or, in the Alternative, Mot. to Stay and to Compel Arbitration, Ex. 1 at 1 [Employment Agreement] [filed Mar. 17, 2006] [hereinafter "Def.'s Br."].)  Further, the Employment Agreement: (1) described Plaintiff's position as a sales assistant; (2) delineated her pay as an hourly wage; and (3) contained language requiring that any claim or controversy arising out of or relating to the agreement "shall be settled by arbitration."  (*Id.*, Ex. 1 at 2 [Employment Agreement].)  In early 2003, Plaintiff was promoted to a different sales position with Defendant.  (Compl. ¶ 8; *see also* Resp. to Def.'s Mot. to Dismiss, or, in the Alternative, Mot. to Stay and to Compel Arbitration, Ex. 1 ¶¶ 22–23 [Cornell Aff.] [filed Apr. 6, 2006] [hereinafter "Pl.'s Resp."].)  It is undisputed that in accepting the new position, Plaintiff's job duties did not change substantially, but her pay changed from hourly wages to commission-based compensation.  (Pl.'s Resp., Ex. 1 ¶ 23 [Cornell Aff.]; Def.'s

Reply to Resp. to Mot. to Dismiss, or, in the Alternative, Mot. to Stay and to Compel Arbitration at 12 [filed Apr. 20, 2006] [hereinafter "Def.'s Reply"].)

At an undisclosed point in time, Plaintiff's manager, Rick Hamilton, asked Plaintiff if her MS would impair her abilities to make sales. (Compl. ¶ 11.) Similarly, in May 2004, Blane Jacobs, Defendant's Vice President, asked Plaintiff whether her MS would prove to be a liability or hinder her ability to make sales. (*Id.* ¶ 9.) Around the same time, Jacobs told Plaintiff that he had concerns about employing a disabled person and asked Plaintiff to obtain a letter from her physician stating she could perform her job duties as a salesperson. (*Id.* ¶ 10.)

Plaintiff's physician prescribed use of a walker to counter the effects of her MS on walking and balancing. (*Id.* ¶ 12.) Since mid-June 2004, Plaintiff has used the walker on a full-time basis. (*Id.*) Plaintiff asserts that her use of the walker did not affect her abilities to perform her essential job duties or force her to seek any special accommodations in order to perform her work. (*Id.* ¶ 13.) Indeed, Plaintiff maintains that she enjoyed success as a salesperson at Defendant's Sand Creek Commons location. (*Id.* ¶ 14.)

Ostensibly because of her success in her position, Jacobs and Hamilton each promised Plaintiff that she would participate as a salesperson in two of Defendant's then-upcoming development projects: (1) Silver Hawk, where she would be one of two salespersons; and (2) Red Hawk, where she would be the sole salesperson. (*Id.*) Plaintiff interpreted Jacobs's and Hamilton's promises as an offer of continued employment with Defendant through the completion of both projects, and began selling units in the Silver Hawk development while it was under construction. (*Id.* ¶¶ 15–16.)

On December 1, 2004, Hamilton terminated Plaintiff's employment with Defendant. (*Id.* ¶ 20.) Hamilton informed Plaintiff that she was being terminated because Jacobs felt she was too great a liability as an employee due to her disability and use of a walker. (*Id.* ¶ 21.) During at least two subsequent conversations, Hamilton repeated to Plaintiff that her termination was due to her disability and not her job performance or qualifications. (Pl.'s Resp., Ex. 1 ¶¶ 41–43 [Cornell Aff.].)

## 2.   *Procedural History*

On March 8, 2005, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination. (Compl. ¶ 23.) On November 29, 2005, the EEOC issued Plaintiff a right-to-sue letter. (*Id.* ¶ 24.) On February 24, 2006, Plaintiff timely filed a complaint in this court, in which she asserted two claims: (1) disability discrimination in violation of the ADA; and (2) breach of contract and promissory estoppel. (*Id.* ¶¶ 28–35.)

On March 17, 2006, Defendant filed a motion, in which it argues: (1) the arbitration clause contained in the Employment Agreement controls the disposition of Plaintiff's claims; and (2) this court should compel arbitration and dismiss Plaintiff's complaint or stay proceedings in the case. (Def.'s Br.) On April 6, 2006, Plaintiff filed a response to Defendant's motion. (Pl.'s Resp.) On April 20, 2006, Defendant filed a reply brief in support of its motion. (Def.'s Reply.)

**ANALYSIS**

*1.     Standard of Review*

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2006).  The FAA permits a district court to compel arbitration where one party has failed or refused to comply with an arbitration agreement. *Gourley v. Yellow Transp.*, 178 F. Supp. 2d 1196, 1201 (D. Colo. 2001).  Generally, federal policy favors arbitration of disputes, but the "FAA was not enacted to force parties to arbitrate in the absence of an agreement."  *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997).  Indeed, a court may only compel arbitration where: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute at issue falls within the scope of that agreement.  *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986) (holding "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit").

A "standard similar to that governing motions for summary judgment" controls motions to compel arbitration under the FAA.  *Stein v. Burt-Kani One, LLC*, 396 F. Supp. 2d 1211, 1212 (D. Colo. 2005).  First, the moving party must present evidence sufficient to demonstrate the existence of an enforceable arbitration agreement.  *Id.*; *see also Avedon Eng'g*, 126 F.3d at 1287 ("The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked.").  Once the moving party makes such a showing, the respondent must then establish a genuine issue of material fact as to the making of the agreement.  *Stein*, 396

F. Supp. 2d at 1212. If the respondent is successful in this endeavor, a trial on the existence of the arbitration agreement is proper. 9 U.S.C. § 4 (2006); *Avedon Eng'g*, 126 F.3d at 1283.

State contract law principles govern determination of whether a valid arbitration agreement exists. 9 U.S.C. § 2 (2006); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If the parties have made an effective contractual choice of law, courts will follow that choice. *See SDJ Ins. Agency, L.L.C. v. Am. Nat'l Ins. Co.*, 292 F.3d 689, 692 (10th Cir. 2002) (applying Colorado law). In the instant case, there appears to be no dispute that Colorado law applies. (Def.'s Reply at 5–6.) In Colorado, the same principles that govern contract formation guide determination of whether parties have agreed to submit a claim to arbitration. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). Consequently, courts must construe any arbitration agreement to give effect to the parties' intent based on the plain language of the agreement. *Stein*, 396 F. Supp. 2d at 1213. Courts must not rewrite arbitration agreements or limit their effect by strained construction and must enforce any agreements as written, unless there is an ambiguity in the language. *Id.* "Unlike the general rule that ambiguities in a contract must be construed against the drafter, ambiguities in an arbitration agreement must be construed in favor of arbitration." *Id.* at 1214. Unless a court finds "with positive assurance" that the arbitration clause is not susceptible to any interpretation that encompasses the subject matter of the dispute, it must compel arbitration. *Id.* (citation and internal quotation marks omitted).

### 2. *Evaluation of Claims*

In the instant case, Defendant argues it has established the existence of an effective arbitration agreement in the form of the arbitration clause contained in the Employment

Agreement. (Def.'s Br. at 4.) It is beyond dispute that the Employment Agreement is a valid contract that contains an express arbitration clause, stating "[a]ny claim or controversy that arises or relates to this agreement, or the breach of it, shall be settled by arbitration." (*Id.*, Ex. 1 at 2 [Employment Agreement].) Thus, the issue before the court is the scope of the clause itself. *AT&T*, 475 U.S. at 651. The Employment Agreement expressly states that it "will begin on January 24, 2002, and end December [sic] unless sooner terminated," and goes on to describe Plaintiff's agreed wages and job title. (*Id.*, Ex. 1 at 1 [Employment Agreement].) Defendant contends that because the contemplated end of the contract is not specifically delineated, the Employment Agreement is ambiguous and ought be construed in a manner providing for arbitration of Plaintiff's claims contained in her complaint. (Def.'s Reply at 11–13.) Plaintiff counters that the clause does not control the dispute because the Employment Agreement was not in force at the time of Plaintiff's termination. (Pl.'s Resp. at 5.)

Interpretation of a written contract and the determination of whether a provision in the contract is ambiguous are questions of law. *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990). As discussed above, the primary goal of contract interpretation is to determine and effectuate the intention of the parties. *May v. United States*, 756 P.2d 362, 369 (Colo. 1988). Ambiguity is particularly relevant in contract interpretation because "[t]he parties' intent is determined primarily from the language of the instrument itself and extraneous evidence of intent is only admissible where there is an ambiguity in the terms of the agreement." *Id.*

To determine whether a contractual provision is ambiguous, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the

words employed, and reference must be made to all of the provisions of the agreement." *Id.* (citations and quotations omitted). A provision is only ambiguous if it is "reasonably susceptible on its face to more than one interpretation." *Allen*, 71 P.3d at 378; *see also Fibreglas*, 799 P.2d at 374 (same). Given the Employment Agreement's express provision that it would "begin on January 24, 2002, and end December [sic] unless sooner terminated," one might argue — as Defendant does — that the clause is ambiguous one *could* understand the term of employment to be ending in December of any year from 2002 onward. (Def.'s Br., Ex. 1 at 1 [Employment Agreement]; Def.'s Reply at 11.) Fatally to its position, Defendant makes no argument as to: (1) how this language would be fairly susceptible to such an interpretation; (2) why such an interpretation would be reasonable; or (3) whether it intended such an interpretation at the time the Employment Agreement was made. (Def.'s Br.; Def.'s Reply.)

Defendant implicitly argues that the introduction of a specific month without a year as the end of the term was meant to convey an uncertain period of time — however long Plaintiff's employment might last — but makes no effort to substantiate this rather attenuated position. (Def.'s Reply at 11.) At first blush, it would seem that were this Defendant's intent, it would not have presented a set term of the agreement. Defendant likely would only have stated that the agreement began on such a date and avoided an ending date in order to convey the open, indefinite period of Plaintiff's employ. Defendant makes no attempt to clarify this apparent inconsistency. More importantly, given the nature and subject of the parties' agreement, I find only one reasonable interpretation exists under the generally accepted meanings and use of the English language. In this case, the omission of the year after "December" cannot overcome the

express reference to the year "2002" appearing two words before it. Indeed, accepting Defendant's interpretation would render meaningless the sort of common exchange where one might say, "My birthday is January 9th" and receive the response, "Mine is the 15th."

Otherwise stated, the instant case is clearly not analogous to the archetypal cases of ambiguity, such as the confusion betwixt the two bonny ships Peerless or the question whether a sum of ten thousand dollars was meant to be paid in American or Canadian currency. *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 n.12 (3d Cir. 1980) (discussing ambiguity generally); *Raffles v. Wichelhaus*, 159 Eng. Rep. 375 (Exch. 1864) (concerning two ships named Peerless). Accordingly, I find that the Employment Agreement contemplated a near year-long term, ending in December 2002.[1]

Having settled the issue of the Employment Agreement's term, I address the scope of its arbitration clause. Defendant spills much ink over the notion that an arbitration clause may survive beyond a contract's expiration and argues that even if the Employment Agreement has expired, the clause still mandates arbitration because Plaintiff's claims arise out of the agreement.

---

[1]Defendant does not argue the lacking year was an error or omission. (Def.'s Br.; Def.'s Reply.) Still, it is worth noting that "[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." *Costello v. Cook*, 852 P.2d 1330, 1332 (Colo. Ct. App. 1993); *see Stein*, 396 F. Supp. 2d at 1216 (same). Considering: (1) the uncontested fact that Plaintiff's compensation changed in early 2003; (2) Plaintiff's assertion that her job title changed, but not her job duties in early 2003; and (3) the Employment Agreement's express contemplation of Plaintiff's former job title and compensation and specific requirement that any modifications be made in writing, I find it would be appropriate to supply December 31, 2002 for the omitted term. (Compl. ¶ 8; Def.'s Br., Ex. 1 at 1 [Employment Agreement]; Pl.'s Resp., Ex. 1 ¶¶ 22–23 [Cornell Aff.]; Def.'s Reply at 7.)

(Def.'s Reply at 13–14.)  Although it is true that courts must presume the parties intended to arbitrate "when a dispute arises under an expired contract that contained a broad arbitration provision," this requirement is not applicable in the instant case.  *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998).  Indeed, "if the dispute cannot be said to arise under the [expired] previous contract," the presumption of arbitrability evaporates. *Id.* (citations omitted).  For a dispute to be deemed as "arising under" a previous contract, it must either "'relate to events which have occurred at least in part while the agreement was still in effect'" or "'involve rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination.'"  *Id.* (quoting *United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*, 897 F.2d 1022, 1024–25 [10th Cir. 1990]).

As to the former, I underscore that the clause itself provides "[a]ny claim or controversy that arises out of or relates to *this* agreement, or the breach of it shall be settled by arbitration in accordance with the rules of the Arbitration Association."  (Def.'s Br., Ex. 1 at 2 [Employment Agreement] [emphasis added].)  As discussed above, I must construe the arbitration clause as it is written.[2]  *Stein*, 396 F. Supp. 2d at 1213.  Here, all of Plaintiff's allegations against Defendant of discriminatory behavior concern actions or statements that took place after December 2002, save one undated statement.  (Compl. ¶¶ 9–13, 20–22.)  Moreover, Plaintiff's case evidently centers on

---

[2] Had the clause contained language similar to that in some of the cases Defendant cites requiring arbitration of "any claim or controversy that arises out of or relates to this agreement, or any extension or modification thereof" or "any claim or controversy that arises out of or relates to the course of your employment" my determination in this case might be different.  *See, e.g.*, *Avedon Eng'g*, 126 F.3d at 1281 n.4.

-10-

her December 1, 2004 termination, which clearly took place after the expiration of the Employment Agreement. (*Id.* ¶¶ 31, 33.) Thus, I simply cannot find that Plaintiff's allegations arise out of or relate to the Employment Agreement from a temporal standpoint.

The analysis of timing set forth above is equally germane to Defendant's half-hearted argument that Plaintiff's anti-discrimination claims involve "rights which accrued during the time of [the] Employment Agreement." (Def.'s Reply at 14.) Perhaps recognizing that its argument is utterly unavailing, Defendant does not attempt to explain how Plaintiff's rights to be free of discrimination could be said to have accrued or vested during the effective term of the Employment Agreement. To "accrue" is defined as "to come into existence as an enforceable claim" or to "vest as a right." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 13 (Philip Babcock Gove ed., 1986). Further, "a cause of action has *accrued* when the right to sue has become vested." *Id.* (emphasis in original). As discussed, all of the alleged actions upon which Plaintiff bases her claim — including her termination and excluding one undated statement made to her — took place after the expiration of the Employment Agreement. In light of this fact, I simply cannot find that her rights accrued during the term of the agreement.

Consequently, I find that Defendant has not established a genuine issue of fact as to the existence of an enforceable arbitration agreement during, arising out of, or relating to the relevant time period in this case. Thus, Defendant may not compel Plaintiff to arbitrate the claims presently before this court.

### *3.    Conclusion*

Based on the foregoing it is therefore ORDERED that:

1. Defendant's motion to compel arbitration and dismiss or stay the case (# 6) is DENIED. This court maintains jurisdiction over this matter and the case shall proceed accordingly.

2. The court will hold a Final Pretrial Conference commencing at 3:15 o'clock p.m. on Friday, January 26, 2007, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado. In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

Dated this 4th day of January, 2007.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge